# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In Re: Mary Fuller | No. 2:19-mc-00109-JHR<br>(Civil Action No. 2:16-cv-03631-PHX-DJH,<br>U.S.D.C. District of Arizona) |

## *MEMORANDUM DECISION AND ORDER ON MOTION TO QUASH SUBPOENA*

Mary Fuller, a Maine resident serving as a nonparty expert witness in the above-captioned disability claim action pending in the United States Court for the District of Arizona ("District of Arizona"), seeks to quash portions of a subpoena duces tecum served on her by defendant Austin Jerome Philbin, M.D., on the basis that those portions subject her to an undue burden in violation of Federal Rule of Civil Procedure 45. *See* Motion To Quash Subpoena ("Motion") (ECF No. 1) at 1-2. In a similar case involving Ms. Fuller in 2013, Judge Hornby denied a motion to compel her to comply with a subpoena duces tecum on the basis that compliance would impose an undue burden. *See Fuller v. Unum Grp.* ("*Fuller I*"), Civil No. 2:13-MC-140-DBH, 2013 WL 5967019, at *1 (D. Me. Nov. 8, 2013). I perceive no material difference between this case and *Fuller I* and, accordingly, grant the Motion.

### I. Applicable Legal Standards

Rule 45 provides, in relevant part, "On timely motion, the court for the district where compliance is required" – in this case, the District of Maine – "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).[1] The movant bears the burden of establishing that the portions of the subpoena at issue impose an undue burden on

---

[1] The "[p]lace of [c]ompliance" is defined, in relevant part, as "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A).

her. *See, e.g.*, 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 2463.1, at 507 (3d ed. 2008).

"Whether a subpoena subjects a witness to undue burden . . . usually raises a question of the reasonableness of the subpoena[,]" requiring "a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it[.]" *Id*. at 501 (footnote omitted). "[T]his process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source[,]" which is "obviously . . . a highly case specific inquiry and entails an exercise of judicial discretion." *Id*. at 501-06 (footnotes omitted).

"In addition, subpoenas duces tecum to a third party are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26." *Hume v. Consol. Grain & Barge, Inc.*, CIVIL ACTION NO. 15-935, 2016 WL 7385699, at *2 (E.D. La. Dec. 21, 2016) (citations and internal quotation marks omitted). *See also, e.g., EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.").

In turn, Rule 26 provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). As in the case of Rule 45(d)(3)(A)(iv), analysis pursuant to Rule 26(b)(1) requires the court to "engage[] in a balancing test, weighing the defendants' need for this information, the availability of other means of obtaining it, and the burden placed on the claimants by the subpoenas." *Tex. Roadhouse*, 303 F.R.D. at 2.

## II. Background

Dr. Philbin is an in-house doctor at Paul Revere Life Insurance Company ("Paul Revere"), a subsidiary of Unum Group ("Unum"). Opposition to Motion To Quash Subpoena ("Opposition") (ECF No. 3) at [1] & n.1.[2] The plaintiff in the underlying action, Mark Biliack, M.D., sued Paul Revere, Unum, Dr. Philbin, and another in-house doctor, Suzanne Benson, M.D., in the District of Arizona for the alleged bad-faith denial of his claim of total disability. Declaration of Theona Zhordania ("Zhordania Decl."), Exh. 1 (ECF No. 3-1) to Opposition, ¶¶ 1, 3.

Ms. Fuller, an expert designated by Dr. Biliack, Motion at 1, formerly worked for UNUM and UnumProvident, the predecessors in interest to defendant Unum, *id.* at 2; Declaration of Mary Fuller ("Fuller Decl."), Exh. B (ECF No. 1-2) to Motion, ¶ 2. In 2002, shortly after Ms. Fuller's position with UnumProvident was eliminated, she began offering her services as a consultant and expert witness in disability insurance claims-handling cases. Fuller Decl. ¶¶ 12, 14-17. Ms. Fuller is almost always hired by plaintiffs, and has testified more frequently in cases against Unum than in cases against all other insurers combined. Motion at 2; Fuller Decl. ¶ 22. Ms. Fuller has written a report expressing the opinion that Paul Revere, Unum, Dr. Philbin, and Dr. Benson denied Dr. Biliack's disability claim in bad faith because, *inter alia*, they improperly used and/or conducted surveillance video, did not conduct an independent medical examination ("IME"), and/or failed to order a Functional Capacity Evaluation ("FCE") and credit an FCE provided by Dr. Biliack. Zhordania Decl. ¶ 3.

Dr. Philbin obtained a subpoena from the District of Arizona, dated April 23, 2019, commanding Ms. Fuller not only to testify at a deposition to be held in Portland, Maine, but also to produce 18 categories of documents. *See* Subpoena To Testify at a Deposition in a Civil Action

---

[2] The pages of the Opposition are misnumbered beginning with page 2, which is referred to as page 1. *See generally* Opposition. I have referred to the actual page numbers in brackets.

("Subpoena"), Exh. A (ECF No. 1-1) to Motion, at Page ID ## 11, 14-17. Ms. Fuller filed the instant motion on May 31, 2019, seeking to quash document request Nos. 10 through 17, *see* Motion at 3-4, which directed her to provide:

> 10. All of YOUR expert reports in which YOU rendered opinions or testified against any insurance company (other than UNUM) within the last five years.
>
> 11. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that an Independent Medical Examination or Functional Capacity Evaluation conducted by an insurance company was reasonable, thorough, fair or in good faith.
>
> 12. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that surveillance conducted by an insurance company was [a] reasonable, valid/ helpful investigative tool or conducted in good faith.
>
> 13. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that an insurance company's decision not to conduct an Independent Medical Examination or a Functional Capacity Evaluation was reasonable or did not constitute unreasonable and/or bad faith conduct.
>
> 14. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that an insurance company's investigation was thorough, reasonable and/or conducted in good faith.
>
> 15. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that the manner in which an insurance company compensated its claims personnel was reasonable, was not improper, and/or did not incentivize claims personnel to deny legitimate claims.
>
> 16. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that an insurance company's claim decision was not unreasonable or in bad faith.
>
> 17. All DOCUMENTS, including any expert opinion, deposition testimony, affidavit/declaration or trial testimony, that evidence or reflect any opinion(s) rendered by YOU that a claims handler who made a claims decision was not biased or incentivized to deny legitimate claims by his or her employer.

Subpoena at Page ID ## 15-17.

With respect to all of the foregoing requests except No. 10, the subpoena provides: "To the extent that YOU contend that complying with this request would be unduly burdensome or oppressive, please produce five sample documents that are responsive to this request." *Id*.

Ms. Fuller has been hired to consult and/or testify as an expert on insurance claims and administration in more than 450 cases, and has written reports in 405 of those cases for 175 lawyer clients. Fuller Decl. ¶¶ 16, 23. Of those 405 reports, between 75 and 80 percent were written in cases in which Unum companies were defendants. Declaration of Mary Fuller ("Suppl. Fuller Decl.") (ECF No. 4-1), attached to Reply Memorandum in Support of Motion To Quash Subpoena ("Reply") (ECF No. 4), ¶ 2. Ms. Fuller's 405 written reports, each of which is between 75 and 100 pages long, have all been written in cases in which she formed the opinion that the insurer had improperly denied benefits. Fuller Decl. ¶ 23. Because she writes reports only in such cases, it would be rare, but not completely out of the question, for her to have included a favorable opinion on a material element of an insurer's handling of a claim in a written report. *Id*. ¶ 25.

### III. Discussion

In *Fuller I*, Unum served a subpoena on Ms. Fuller seeking, *inter alia*, all of her billing and time records relating to claims against Unum since 2001, divided into four categories: "where [she] was not disclosed as an expert witness; where she was disclosed as an expert witness; where she concluded that Unum acted reasonably and/or in good faith; and where she concluded that Unum acted unreasonably and/or in bad faith." *Fuller I*, 2013 WL 5967019, at *1. Judge Hornby acknowledged that it was Ms. Fuller's obligation – a "heavy burden" according to *Horizons Titanium Corp. v. Norton Co*., 290 F.2d 421, 425 (1st Cir. 1961) – to show undue burden. *Id*. at

*2. However, he denied Unum's motion to compel the production of the requested compensation records, "designed to deal with alleged anti-Unum bias," explaining:

> Unum had full opportunity to question Fuller at [her] deposition about her bias, it has the fact that Unum laid Fuller off before she undertook her current career, it has the statistics of her favorable and unfavorable testimony in other cases, and it should have its own records from the previous cases where it was a defendant and Fuller testified.

*Id.* at *3. Judge Hornby concluded that, while Unum was "able to demonstrate that some, but not all," of the "many scores of hours" Ms. Fuller said it would take her to review her cases to provide the requested information "would be unnecessary[,]" the remaining time was "unduly burdensome, given the other evidence of bias that Unum can use and the remote likelihood that these materials would lead to the discovery of admissible evidence." *Id.*

Dr. Philbin asserts that the subpoena at issue was drafted with *Fuller I* in mind and that this case is distinguishable in several respects. *See* Opposition at [10]-[11]. First, he points out that Judge Hornby held that Unum's request for *compensation records* was unduly burdensome, ruling that the parties' dispute over *expert reports* was mooted by Ms. Fuller's representation that she had no reports responsive to Unum's requests. *See id.* at [10]. He notes that, by contrast, in this case, he seeks no compensation records apart from those pertaining to this case, and Ms. Fuller has implied that she has expert reports responsive to his requests. *See id.* at [10]-[11]. Second, he notes that, unlike in *Fuller I*, the defendants in this case make a proposal "to eliminate any potential burden on Ms. Fuller"; namely "to have a mutually-acceptable third-party vendor review the reports to determine if there are any responsive documents" and "to reimburse Ms. Fuller for the cost of collecting and transmitting her documents to the vendor." *Id.* at [11]. Finally, he observes that, whereas in *Fuller I*, Ms. Fuller had already been deposed before the subpoena was issued, the subpoena at issue here was served prior to her deposition so that the defendants could question her

6

about responsive documents, or the lack thereof. *See id*. He argues that this is significant because a movant's "'heavy burden' to quash a subpoena is 'particularly' important when the motion is filed 'before the deposition even commences[.]'" *Id*. (quoting *Horizons Titanium*, 290 F.2d at 425).

I perceive no material distinction between this case and *Fuller I*.

### A. Showing of Burdensomeness of Subpoena

First, and most importantly, Ms. Fuller persuasively counters that the defendants' proposal does not relieve the burden of responding to the subpoena. She represents that she has reports potentially responsive to request Nos. 11 through 15 and/or 17 of the document demand. *See* Suppl. Fuller Decl. ¶ 11. She avers that between 90 and 95 percent of the 405 reports she has written rest on information provided by defendants pursuant to protective orders, and that, when preparing reports, she often includes entire protected documents as exhibits, cuts and pastes portions of protected documents in the body of her report, and/or quotes from them in her reports. *See id.* ¶¶ 3-4. She attaches five sample protective orders from cases involving Unum, representing that similar protective orders were entered in all Unum cases in which she wrote reports (accounting for more than 300 of her 405 reports) and in non-Unum cases involving all but approximately 20 to 40 of her reports. *See id*. ¶¶ 2-3 & [Sample A], Exh. A (ECF No. 4-2), [Sample B], Exh. B (ECF No. 4-3), [Sample C], Exh. C (ECF No. 4-4), [Sample D], Exh. [D] (ECF No. 4-5),[3] & [Sample E], Exh. E (ECF No. 4-6) thereto.

She states that, as she understands the terms of the protective orders, she "would be prohibited from turning over to any third party any report that reproduces, in any form, any part of any document covered by any of the orders." Suppl. Fuller Decl. ¶ 5. Therefore, prior to turning any of her reports over to a third-party vendor, she would have to review all 405 of her case files

---

[3] Exhibit D was mistakenly labeled Exhibit C.

to determine whether a protective order had been entered and, if so, whether her report included information subject to that protective order. *See id*. ¶ 8. She anticipates that "[m]ost cases" will include protected information, requiring her "to arrange for the protective order to be lifted or modified before any third party can be given access to the reports." *Id*. This "entire review process" would "consume many hours" of her time. *Id*. ¶ 9.

Dr. Philbin challenges the adequacy of this showing of burdensomeness, asserting that expert reports are not expressly covered by any of Ms. Fuller's five sample protective orders; she makes no showing that any particular report cannot be produced pursuant to a protective order; the sample protective orders that she does submit allow the "Designating Party" (in each of those cases, Unum) to waive any obligations she otherwise might have had simply by consenting to the production of documents; and she makes no showing that her reports concerning other insurance companies are subject to a protective order. *See* Sur-Reply in Opposition to the Motion To Quash the Documents Subpoena Served on Ms. Fuller ("Surreply") (ECF No. 13) at 4-5. Dr. Philbin also supplies evidence that seven of Ms. Fuller's expert reports are available through the public Pacer database. *See id*. at 5; Supplemental Declaration of Theona Zhordania ("Suppl. Zhordania Decl.") (ECF No. 13-1), attached thereto.

Nonetheless, as in *Fuller I*, Dr. Philbin's evidence and arguments do not undercut the force of Ms. Fuller's showing, demonstrating only that "some, but not all," of the many hours Ms. Fuller avers it would take her to review her cases to provide the requested information "would be unnecessary[.]" *Fuller I*, 2013 WL 5967019, at *3.

First, while Ms. Fuller's sample protective orders do not expressly cover expert reports, they do cover the information contained within protected documents, *see* Sample A at Page ID # 81, ¶ 2; Sample B at Page ID # 91, ¶ 3; Sample C at Page ID # 103, ¶ 3; Sample D at Page ID

# 112, ¶ 3; Sample E at Page ID # 124. Ms. Fuller avers that she often includes such information in her reports. *See* Suppl. Fuller Decl. ¶ 4.

Second, while Ms. Fuller makes no showing that any particular report cannot be produced pursuant to a protective order, she need not do so to demonstrate the burdensomeness of the document requests at issue. She avers that between 90 and 95 percent of the 405 reports she has written rest on information provided by defendants pursuant to protective orders. *See id.* ¶ 3. It, therefore, stands to reason that she would have to screen most, if not all, of her reports to determine whether their production would run afoul of a protective order.

Third, it does not appear that even as to the large percentage of Ms. Fuller's reports involving Unum, Unum alone has the power in every case, as "Designating Party," to consent to the use of confidential information in this litigation. Two of Ms. Fuller's five sample protection orders provide for the dissemination of confidential information for purposes other than the lawsuit at issue only with the written prior consent of "all parties." Sample A at Page ID # 81, ¶ 3; Sample C at Page ID # 103, ¶ 4.

Fourth, Ms. Fuller does make a showing that some of her non-Unum reports are subject to protective orders, averring that such orders cover all but approximately 20 to 40 of her 405 reports. *See* Suppl. Fuller Decl. ¶ 3.

Dr. Philbin, finally, argues that "the few courts that have addressed the issue have rejected the argument that expert reports in other cases are not discoverable because they may be subject to a protective order[,]" Surreply at 6, a proposition for which he cites *Expeditors Int'l of Wash., Inc. v. Vastera, Inc.*, No. 04 C 0321, 2004 WL 406999, at *4 (N.D. Ill. Feb. 26, 2004).

However, whether a document containing information subject to a confidentiality order entered in a prior case is discoverable and whether the terms of that confidentiality order must be

met are different matters. *See, e.g., Eli Lilly & Co. v. Perrigo Co.*, CAUSE NO. 1:13-cv-851-SEB-DKL, 2016 WL 10459789, at *1 (S.D. Ind. Apr. 1, 2016) (ruling that expert reports from a prior litigation were relevant and discoverable but that "the previous protective order must be complied with[,]" necessitating redactions). Ms. Fuller reasonably claims a need to determine whether information in her prior reports is subject to the terms of confidentiality orders entered in the majority of the underlying cases. That process is burdensome.

### B. Balancing of Burden Against Benefit

I next weigh the burden to Ms. Fuller of responding to the requests at issue against the benefit to the defendants of obtaining the information they seek, concluding, as did Judge Hornby in *Fuller I*, that the scales tip in favor of a finding that those requests impose an undue burden. In this case, as in *Fuller I*, Dr. Philbin and his co-defendants seek the documents at issue both to demonstrate Ms. Fuller's alleged anti-Unum bias and as possible fodder for impeachment. *Compare Fuller I*, 2013 WL 5967019, at *3 n.7, *with* Opposition at [3]. Yet, in this case, as in *Fuller I*, the defendants have "other evidence of bias[,]" and the "likelihood that these materials would lead to the discovery of admissible evidence" is "remote." *Fuller I*, 2013 WL 5967019, at *3.[4]

In essence, Dr. Philbin seeks the production of (i) any reports prepared by Ms. Fuller in which, despite ultimately finding that insurers improperly denied benefits, she commented favorably regarding aspects of insurers' claim decisions, and (ii) all reports that she has produced in the past five years for any insurer other than Unum. *See* Subpoena at Page ID ## 15-17. He contends that these documents are relevant because, if Ms. Fuller's prior reports are inconsistent with the opinions she rendered in the underlying District of Arizona case, she can be impeached

---

[4] That the request in *Fuller I* was for compensation records, *see Fuller I*, 2013 WL 5967019, at *3, while that at issue here is for expert reports, *see* Motion at 3-4, is a distinction without a difference.

with her prior testimony, and, if she opined in prior cases that every insurer was guilty of bad faith because of the manner in which it conducted surveillance, failed to order or misused an IME, or failed to order or misused an FCE, her prior testimony will demonstrate bias. *See* Opposition at [4]-[5].

If, as the defendants "strongly suspect," Opposition at [5], Ms. Fuller has never expressed a favorable opinion toward an insurer in all 405 of her reports, the probative value of the requested discovery will be marginal. Ms. Fuller has already acknowledged that she has never testified on behalf of an insurer and that she expressed an opinion in all 405 of her reports that the insurer improperly denied benefits. *See* Fuller Decl. ¶¶ 22-23. And, in the 450 cases on which she has consulted, she has found impropriety on the part of the insurer 92 percent of the time. *See* Suppl. Fuller Decl. ¶ 10.

Moreover, while Dr. Philbin did not have the benefit of Ms. Fuller's deposition testimony when he issued the subpoena at issue, as did the defendants in *Fuller I*, his co-defendant Unum has other evidence of alleged anti-Unum bias, including "the fact that Unum laid [Ms.] Fuller off before she undertook her current career" and "the statistics of her favorable and unfavorable testimony in other cases," and "its own records from the previous cases where it was a defendant and Fuller testified." *Fuller I*, 2013 WL 5967019, at *3.

While Dr. Philbin argues that "courts have repeatedly rejected the argument that a discovery request should not be enforced because the information sought is 'equally available' or already in the requesting party's possession," Surreply at 2-3, the authorities he cites in support of that proposition are inapposite. Ms. Fuller does not object to producing the requested documents on the basis that Unum already has them but, rather, on the basis of the imposition of an undue burden. In that context, as noted above, the "process of weighing a subpoena's benefits and

burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." 9A Wright & Miller § 2463.1, at 501-05 (footnotes omitted). As in *Fuller I*, the fact that Unum has been a party to more than 300 cases in which Ms. Fuller has provided written reports and, therefore, presumably has access to them, *see Fuller I*, 2013 WL 5967019, at *3, tips the balance in favor of granting Ms. Fuller's motion.

### IV. Conclusion

For the reasons discussed above, Ms. Fuller's motion to quash that portion of the subpoena served on her by Dr. Philbin containing document request Nos. 10 through 17 is **GRANTED**.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 11th day of October, 2019.

    /s/ John H. Rich III
John H. Rich III
United States Magistrate Judge